Good morning. Robert King of Ryan, Swanson & Cleveland, appearing on behalf of the appellant SuperValue Holdings, Inc. This appeal concerns two issues. First, whether SuperValue invalidated its option right for a new store under Washington law, specifically the test set forth in Dupree v. Donahue by the Washington Supreme Court in 1958. The district court here below ruled that SuperValue did invalidate its option because it contended for a different definition of an option term. The district court's ruling has eliminated a valuable option right and eliminated the main reason that SuperValue agreed to a 20-35 year lease commitment in the first place, which was the promise of a new store in Ocean Shores that would allow that area to remain in SuperValue's wholesale network. The ruling is also contrary to Washington law, specifically the Dupree case, and we believe will erode the value of options in the future. As we stated in our brief and we'll talk about today, SuperValue did not invalidate its option right because its actual acceptance in October 2007 was unconditional to the extent that SuperValue did misinterpret a contract term, specifically here, loan constant, that cannot invalidate an option acceptance under all law that we can find. And third, there's no evidence in this record of any act by SuperValue at any time that would constitute rejection under Dupree. We would ask that the district court ruling with regard to the invalidation of the option right be reversed. The second issue is whether there's admissible evidence in the record that raises a genuine issue of material fact and precludes summary determination of the meaning of loan constant in Morris' favor. There is. The district court ignored at least three pieces of evidence, which I will highlight today, and we'll get to that second argument in a moment. But first, we'd like to turn back to the issue of the invalidation question, and our argument is based on the bedrock principles of what an option agreement is in the state of Washington. Obviously, it's a right to buy or lease property for a specific time. The option or the buyer or lessee has that right to exercise an option right for the entire period. That's what you pay for when you get an option right. In Washington, when you obtain an option right secured by consideration, it becomes irrevocable. It cannot be withdrawn by the seller or landlord for the time stated in the option. Here, it was 10 years. Is it your position that the other party, I can't remember, Morris, sought to revoke the option? Mr. Morris is contending. When Supervalue originally exercised its option in October 2007, Mr. Morris' position was that the parties, specifically Section 34, the new store provision in the lease, was an unenforceable agreement to agree. He was contending that the terms in the option were all too vague, one of them being loan constant. There were many terms that he said were vague, one being loan constant, another one being land, and another one being base rent. He only claimed that, I don't think he ever claimed that Supervalue rejected its option until the district court made its ruling. Right, but you made the point that it's irrevocable, and I was just asking you, is it part of your argument that Morris impermissibly sought to revoke the option? Mr. Morris' position now is that the option has been revoked by Supervalue's apparently invalid exercise. That's not a revocation, that's an invalid exercise. Mr. Morris, the district court's ruling is that Supervalue invalidly exercised its option. Obviously, we don't agree with that. But it wasn't revoked by Mr. Morris, was it? No, no. We're not aware. I now understand your question, Your Honor. I'm sorry. No, we don't think that there's anything. The landlord, or the lessor in this case, Mr. Morris, he can't revoke the option right. The option right belongs to the lessee Supervalue here for the stated period of just 10 years. Well, you made the point that it's irrevocable, so I was wondering why you made that point in the context of this case. It's important because they make the argument later on that Supervalue tried to accept in 1999, and the point of an option is that it remains open throughout the option period. It cannot be taken away from Supervalue unless they reject under Dupre, and that did not happen here, Your Honor, for the reasons that I'll go over. So even if there was a dispute about a material term under paragraph 34 as to what the base rent was under this dispute over loan constant, which is what Judge Settle picked up on, that when Supervalue exercised its option, or tried to, and Morris refused to proceed, Judge Settle said, well, your exercise of the option was conditional on Morris accepting your view of the base rent. Now, that's material, as I understand it, would be material, because he would have to undertake a fairly expensive investment and activity, and if he wasn't getting compensated and reimbursed under what the original understanding or the intent of the total package was, he didn't want to go down that route. So I think I'm understanding what the district court was bothered about. So when you say Supervalue had an irrevocable right to exercise its option, it had to exercise its option in a way that was consistent with the financial and economic structure of the lease agreement, which obviously was in dispute. Am I getting that right? That's the district court's position and their reasoning. Obviously, Your Honor, we disagree with that. I'm just asking, let's suppose that the district court's assumption that Supervalue was correct, that Supervalue had made it explicit that it was insisting upon its view, it was exercising its option, and in exercising it, part of it was pursuant to its construction of paragraph 34 on the loan constant provision. The exercise, the Dupre test in Washington requires that the written acceptance, because here the acceptance had to be in writing under Section 26 of the lease. Under the Dupre test, to constitute a rejection, to invalidate your option right, Your Honor, you have to condition your acceptance in the notice itself. That did not happen here, and it didn't happen at any time prior to 2007 either, Your Honor. The Dupre test requires two things. One, at the time you make your acceptance, you have to expressly state that you are conditioning your acceptance upon the landlord or the seller's agreement of an unwarranted term, an additional term. We have cited Supervalue's acceptance letter of October 24th, 2007, in full in our brief, and as you'll see, Your Honor, there's nothing in that letter. No, I understand. I guess there's a quote. Or inferred it, I should say. You're saying there's an extra term? That is, I don't understand your position. It seems to me the question is whether the purported exercise of the option includes a new and different term or whether the question is, is it valid if two parties are not, don't have a meeting of the minds as to what the exercise means. It seems like those are two different questions. Adding something versus having two different ideas about what the meaning is. Judge Graber, you're correct. Those are two different questions. The first question is the meeting of the minds. Did the parties have a meeting of the minds so as to have a legally enforceable agreement? And they didn't, it seems to me. Well, actually, the district court ruling below, that was Mr. Morris's argument, was that the agreement was an unenforceable agreement to agree. The district court ruling below was that the parties have, with definite certainty or reasonable certainty, have had articulated in Section 34 the new store option. All the elements for an enforceable agreement. That issue is not here on appeal. That's the law of the case, that the parties had a legally enforceable option agreement. The only question in front of you, which is the second question, Judge Graber, which is, well, did SuperValue invalidate their option because they had a different interpretation of loan constant? But that was part of the agreement. The agreement that the district court referenced included the Section 34, which had the term loan constant. So the district court was saying, yes, the parties agreed that the option would be exercised according to Section 34, but they don't agree as to what Section 34 really means in terms of the loan constant. Let's take that just one step further, Judge Rawlinson, in that let's say the parties, and they did, they did have a disagreement about what loan constant meant. In order to constitute a rejection under the Dupre test, when SuperValue made its exercise, it would have had to say, we are exercising our option under the lease, but our exercise is conditioned upon you accepting our definition of loan constant. So what should Mr. Morris have done in order to clarify that you had abandoned the position you had insisted upon all of this time, that it had a materially different interpretation of what the base rent was? It's very simple, Judge Fischer. So when you exercise an option, right, like SuperValue did here unconditionally, a new contract is formed. You have now formed the contract for the new store. Which has a completely ambiguous material term, right? So why is that a contract if there's an ambiguous material term? It's not an ambiguous term, Your Honor. The parties both had a definition in mind. I don't think you answered my question. I asked, what was Mr. Morris supposed to do? Yes. Okay. I'm happy. I was just, Judge Fischer, asking. I understand. I apologize. It's okay. I think they're all tied together. Yeah. The parties, when they form a new contract, if Mr. Morris said, no, I'm not going to go forward because we still have this disagreement about what loan constant means, he could have filed a declaratory judgment action just like we did. Or he could have simply sent a letter saying, is this conditional on my accepting your review of paragraph 34? He could have sent that, but that wouldn't have changed it. That wouldn't have been enough? No. It wouldn't have changed the analysis, Your Honor. Why? The Dupre test, because it's the opposite. You're just being cute, according to Judge Settle, of not putting it in and leaving it ambiguous. No, I don't think so, Your Honor. So you're saying that he has to initiate litigation in order to get you to put it in writing. Like any contract, if the parties have a disagreement about a term, they can file a declaratory judgment. But, you know, there's a whole concept of not going to court if you don't have to. So the simple remedy would have been, and I'm not, you know, this puts more of the burden perhaps on Mr. Morris because he didn't do it, but to say that super value, where it has assiduously insisted on a different and material interpretation of the compensation provision in paragraph 34, can avoid having it as a condition by not putting that in writing. Therefore, you're saying under Washington law, Mr. Morris's remedy is now to, on the assumption that you are insisting on paragraph 34, file a legal action to which that will require your firm to either cut or fish bait and say yes we are or no we're not, at which point now it's of record when a simple letter would have done it one way or the other. Well, just like any legal action, any action to enforce the terms of a contract, if once the parties had formed a new contractor and owner, if they had a disagreement about the terms they could go to court and have that. Yeah, you're missing my point. I apologize. You're saying that the only thing that would be binding is if Morris forced super value in a legal document in a court action to declare its understanding of paragraph 34 when it sent the exercise letter. Once super value sent an exercise letter, it formed a new contract, and if a court then determined that a term means something super value didn't think it meant, super value has to live by that term, just like Mr. Morris would have, had that been a dispute, just like any other contract. So all of the history between the parties and the communications regarding the meaning of the term is to be disregarded? No, Your Honor. I mean, the test is, did you take any action to reject your option right? The case law is clear that any misinterpretation by a party does not invalidate. Dupre does not say that. Dupre says that if it's unconditional, it's binding on the parties. But if it's conditional, it's not. In that case, there was just an extension of time requested. There was no urging of a different interpretation of any material term. So that case really doesn't help you to the extent that you think it does. Well, I humbly disagree, Your Honor. In Dupre, the optionee actually submitted a request in the acceptance notice asking for an extension of time. They wanted to change the terms. But they didn't condition the exercise of the option on changing the terms. Correct. And neither has Supervalu done here, Your Honor. If you look at the letter they submitted, they have not conditioned their acceptance of the option rights on any definition of a loan policy. That ignores that. I mean, as Judge Fischer intimated, that just ignores the history. It's like everybody's supposed to forget that this is the meaning that we insisted on. And then when I exercise the option, they'll be stuck with my meaning or have to go to court for it. So that's a really ‑‑ I just don't think that's a persuasive argument that the court should ignore all of the past communications between the parties in determining whether or not this was an unconditional acceptance. Well, I would say that the Dupre test requires you to express the condition that didn't happen here, Your Honor. We're not saying ignore. The fact that the parties have a running disagreement about a term doesn't mean that Supervalu was walking away from its option right. Every act that they put forward here demonstrates that they wanted the new store. That's the reason. On their terms. No, they're not. If you look at the ‑‑ as soon as the court made its decision, Supervalu sent a letter saying we would go forward based on the definition determined by the court, meaning loan consent means Mr. Morris's way. He said no. Supervalu would have gone forward under any definition. What they wanted was the chance to have that determination made, and they weren't allowed to have that determination made because they had a disagreement about the term is now being used as an invalidation of their option right. Thank you, Counselor. You've exceeded your time considerably. All right. Thank you, Your Honor. Thank you. Good morning. This court should affirm Judge ‑‑ Introduce yourself for the record, please. I'm so sorry, Your Honor. I'm Stephanie Bloomfield on behalf of Appelese Morris. This court should affirm the trial court's order on summary judgment finding that Supervalu failed to validly exercise its option and also affirm the trial court's holding that loan consent was not ambiguous. In doing so, this court should not put on blinders and look solely at the October 2007 option exercise as Supervalu advocates. Instead, this court must look properly at Supervalu's conduct at the time the option was originally exercised six years earlier, look at the condition Supervalu continuously imposed on that exercise of the option, which constitutes a rejection under Washington law. But, Counsel, you know, the problem with that argument is that if Mr. Morris thought there was a question about the prior dispute, all he had to do was ask for clarification. And secondly, that wasn't thrust of his objection. It was saying this option is unenforceable because of the vagueness of these terms. It didn't say what we're now crisply focusing and you're now crisply focusing on, thanks to the district court having picked up on this argument. So I'm a little troubled by the post-facto rationale that's been advanced. And here's what I distill from Supervalu's argument, is that, yes, there was a dispute, but they exercised the option, and Mr. Morris could have, whether it had to go all the way to a court filing or not. They were never given the opportunity to clarify that the option that they were attempting to exercise, they wanted to go forward regardless of whether they had to accede to Mr. Morris' interpretation of loan constant or not. So why wouldn't it have been appropriate in this case for the district court not to have invalidated the option and terminated it, but to have given them the opportunity to accede to the, or to back off and state what their position was? Your Honor's correct. There were a variety of disputes that arose in lease negotiations. But what happened is Supervalu continued to impose the same condition they had done earlier, which was insisting that loan constant meant. After there was a ruling? No, after there was a ruling by the district court counsel, and the court is correct, after the October 2010 ruling, that was the first time that Supervalu exercised its option and made clear it was no longer going to impose that condition. That was too little too late. Okay, so after it sent the acceptance letter, exercise letter, what was the history of the loan constant contest at that point? Was there evidence post-exercise that indicated and validated the assumption that they were exercising according to their understanding of the loan constant? Yes, Your Honor. I would cite you to ER 986, which is a December 11, 2007, email communication from Supervalu, which is setting out their understanding of the terms for the loan constant, and it's again using the straight interest rate. And that was after the October 2007 exercise. What was the date? Excuse me, what was the date? December 11, 2007, and you'll find that at Volume 4 of Supervalu. Could you just give me the ER again? 986. Thank you. And this was in an email from Supervalu. And granted, Your Honor, when the litigation arose, by that point, in addition to the loan constant dispute, there were a variety of other disputes about how terms that were not defined in Section 34 were going to be defined in this new lease. So there were a variety of issues being posed. Counsel, it seems to me, in a funny way, contradictory to say that all of these terms in paragraph 34, including loan constant, have a fixed given meaning, which is in your client's favor. I mean, it's the meaning that he has put forward. But yet the option isn't valid. It seems to me that one way to look at this is to say that what this represents is an acceptance on Mr. Morris' terms. I disagree with Your Honor, and the reason I disagree is because the court found that there was a known definition  This isn't Mr. Morris' definition. You'll find it at SER. My point is the same. If there's an obvious, everybody in the world knows that these are the definitions, then that's superimposed on this letter, the purported exercise of the option. I don't understand why that isn't the end of the matter. That is a valid exercise using those known meanings for all of these different terms. Because what Dupre tells us is if the optionee attaches conditions not warranted by the terms of the option. I'm reading a quote from Dupre here. I know that, but I've read that case. But the option exercise, at least facially, does not include any conditions. I would agree with Your Honor. What we have is immediately the same pattern, reasserting itself with an email from SuperValue, again insisting loan constant isn't what we're going to use. We're going to use an interest rate, and that's another rejection. What Dupre says, what SuperValue wants to say is if we write a nice, clean exercise of our option and simultaneously in other writings and orally insist on a condition, we're safe. That's not what Dupre says. And if you look at the facts in Dupre, it talked about oral conversations that were going on between the attorney for the owner and the tenant before and after he got this written letter. And what Dupre said was you look at all of those, and clearly this wasn't a condition he was asking for some additional time. And what we have here is a letter that doesn't impose a condition, but SuperValue simultaneously insisting on the same condition they had back in 1999 and 2000 until the deal fell apart in 2001 when their general counsel wrote a letter insisting that this was the term to be used with the definition of interest rate. And I think where you're going, Judge Graber, is what if there's really a term that's ambiguous? This seems like it's a good-faith dispute, but what we have here, and I started my argument with, this is a term that's defined in the dictionary. We submitted evidence to the court of the dictionary definition of the term. SuperValue didn't even contradict that, so the court found this isn't ambiguous. Everyone knows what this term means. It's like we know what compound interest is. It's not simple interest, loan constant. It's not interest rate. But instead, SuperValue continued to try to impose a different condition to save itself a couple million dollars over the 20-year term of this new store lease. So your argument is if Morris had accepted the option knowing that there was a different definition in SuperValue's mind, then it could have been stuck with that different definition if it accepted the option knowing that? I'm not sure I would say that. If no one ever, if all of the parties to this contract were unaware of the true definition of the term and everyone thought loan constant meant interest rate, we wouldn't be here. Right. But what would have happened if Morris had accepted the letter with the past conversations knowing that SuperValue had this definition in mind? What would have happened then? The threshold issue you're going to have is we have to get the terms of the lease because that's going to define the rent and all the lenders Mr. Morris has to go to to borrow this $5 million to build a shopping center and want to see the income stream. So either they were going to use loan constant as it's defined or SuperValue was going to insist on interest rate. It would have brought the issue to a head as it did quite quickly once again. And if they had a proposed interest rate again and Morris accepted that. I'm sorry. Give me. So what you're saying in response to Judge Rawlinson's question is that Morris did, in fact, go out and attempt to price out the building of the store? Not in 2007. That was done back in 2000, and I can give you the record site, the construction. But not after the facially unqualified acceptance? I do not believe. It's not in the record, and I can't remember. I was trial counsel, but I just cannot remember if that actually occurred or not, Your Honor. I do not believe there was a second trial. Assuming Duprey says it has to be in writing and that ultimately if you get an unqualified written statement, then what, under Washington law, what process would trigger the resolution of that? Counsel says if you have any doubts, you can't just write a letter. Apparently you have to go file a declaratory relief action. You're saying that if Mr. Morris had actually gone out and priced out the option under his interpretation, that would have immediately surfaced because his projected income stream would have reflected his interpretation. That would have forced Supervalue's hand? Or did they have any role in that that they would have to take action on? In other words, is Mr. Morris empowered in any way under his own control to surface the issue to make clear, short of going to court and filing an action, that Supervalue is insisting as a condition of the exercise that the deal go forward on its interpretation of loan constants? I don't think Mr. Morris was required to do that. I'm not asking whether he was required. I'm just asking could he have. Could he have brought a declaratory judgment? No, I'm trying to find some way other than going to court. In other words, just as a matter of dispute resolution in the real world, in the business world, there are ways you can get to the question at issue if you proceed. What they're saying, well, you should have proceeded, Mr. Morris should have proceeded on the assumption that they're willing to take it no matter how Paragraph 34 got interpreted on the base rent. He should have gone forward. And if he didn't go to court, well, that's too bad on his part because it's unqualified and they haven't invalidated the option. And I'm saying, okay, let's suppose Mr. Morris didn't want to do anything that would cost going to lawyers, going to court, and so on, but there was something practical that he had to do, and you were suggesting it might be that he would approach prospective lenders and provide financials. He could have done the pro forma, sent them to super value, and said, okay, I'm assuming that this is how the income stream is going to go. Let me know if you have any objections. I think Your Honor is correct. He could have done that. If they didn't object, then he would have a record that says, you know, it wasn't conditional on their view. They took it as Mr. Morris had been insisting all along. And what we actually have here was a series of letters back and forth from attorneys on that issue and a variety of others, a panoply of others, and it all was triggered by that threshold lease issue because that was the first step that had to occur to go on to the next step to get construction moving forward. Okay. So why did Morris reject the option? Morris didn't reject the option under, from a legal point of view, super value rejected the option. Super value's got the right to exercise this option during the period. They exercised it, and when they simultaneously imposed this condition, that was the rejection. So Morris didn't. But Morris had a response to it, didn't accept it. So what did Morris? When Morris received the exercise, what did Morris do? In 2007? Yes. Okay, I just want to clarify. In 2007. The incident that triggered the declaratory judgment. What happened? What happened was Morris started getting the financial work together and negotiating between attorneys to try to get a lease provision together. And you'll see from the e-mails very early on, I believe the one I cited to was in December of 2007 that's in the record. They're, again, using interest rates. So within a period of time, it fell apart. So when you say it fell apart, how did Morris communicate to super value? We're not going to. Well, the communications were in writings, negotiations between counsel, but ultimately it was like we're not building the store, because if you use interest rate instead of loan constant, the income stream, and a variety of other issues they didn't agree on, how much land, that aren't here before. So Morris essentially did not accept the option request. Yeah, Morris did not agree to the condition super value attempted to impose, is how I would characterize it. Now I'm confused. Maybe I'm the only one, but okay. I sketched out a scenario, and you're seeing that actual scenario happen. In other words, they sent their acceptance or exercise of their option, and he acted to implement on the assumption that the option had been exercised, and went about getting the bids for a construction loan. They didn't get as far as bidding. They had done that back in 2001, but he started doing the initial steps, which was to start figuring out the lease. Yes, and at that point, that triggered a response from super value, which explicitly made clear that the pricing had to accept its view of loan constant. The response from super value that we have in the record, because all of the series of correspondence is not in the record, uses interest rate instead of loan constant in the portion of the e-mail I cited you to earlier that is talking about how this is going to work under the lease. And I have very little time left, so I'll wrap up. You're into negative time, so go ahead and wrap up. I will wrap up quickly. The last thing I would say is to respond to super value's assertion that Section 34 requires that this exercise be in writing, if that's critical to the court at all. There are portions of the lease, a variety of sections, that require written notice and specify that. Section 34 is silent. It does not require written notice, so you can, under Dupre, imply it from other writings and statements, which is why we have the acceptance back in or, excuse me, the exercise back in 2001. Again, we would ask that you affirm the district court, and thank you. Thank you. Mr. King, you used up your time, but we used a lot of it with questions, so you may have a minute for rebuttal if you want it. I would first disagree with counsel's statements about statements that are not in the record with regard to what Mr. Morris did after super value accepted its option in October 2007. She's pointing you to a single e-mail. And remember, the parties moved on other grounds for summary judgment, and Judge Settle, sua sponte, made this ruling. So I'm not sure the record is as developed as it could be, and I can't go back and develop it now in retrospect. But after super value exercised its option, the initial response was, we're kind of back where we were. I don't agree with all these terms and the meaning of these terms. But in that interim, super value agreed that they would use Mr. Morris's definition of a known constant if necessary. They would do that. They had a number of e-mails and conversations about different scenarios that they could use to make this deal work, because it all came down to money. And was that information provided to the district court judge, where you're saying that super value indicated it would accede to Morris's definition? I don't think it's in the district court record because that wasn't one of the issues that was being raised. The issue that was being raised was, do the parties have an agreement in the first place? The full record certainly isn't. There might be an e-mail here or there. But the point being that it's not the case that Mr. Morris said, well, are you conditioning your acceptance? And super value said, yes, we are. No, that's not the case. Well, not that explicitly, maybe. But did the district court explore that point before making the ruling? Never? No, Your Honor. That wasn't something. As I said, Judge Settle made the decision sua sponte. Was there any effort to put that information before the judge? Then he asked the motion for reconsideration. The rules don't allow us to supplement at that point. You mean under local rules? You can't move for reconsideration? We did move for reconsideration, but we did not supplement the record with additional. Okay, let me reframe the question. Did you tell Judge Settle that please reconsider your invalidation of our option because we have indicated to the plaintiffs, I mean, yeah, to Mr. Morris, that even under his interpretation, notwithstanding this extrinsic evidence or whatever that the court has relied on, the court should be aware that we have told him we would proceed and we would like the opportunity to supplement the record to prove that? That letter from SuperValue to Mr. Morris is part of the record. It's at supplemental ER 17 where SuperValue tells Mr. Morris they will go forward with Judge Settle's ruling on loan constant. What was the ER saying? Supplemental ER 17. Was that brought to the attention of the district court judge, though? It was in the briefing in the motions for reconsideration. I don't know what he actually looked at. There was no oral argument below. Well, you offered it to him in any event. It was provided to Mr. Morris. We did not provide it, but it was in the record, and Judge Settle was made aware. My closing point, as I see, I'm already out of time, would be that the Dupre test required conditional acceptance. That didn't happen here. What you have here is two parties disagreeing about a term. The case law and the commentators are universal in that misinterpretation or a contrary interpretation before acceptance does not invalidate your option, and that's by Professor Corbin and by Friedman, all these. There's a number of cases that we cite to that point. Thank you, counsel. The case just argued as submitted, and we appreciate very much the arguments of both counsel. With that, we will be adjourned for this morning's session.
judges: Graber, Fisher, Rawlinson